[No. 38129.    Department One.    April 14, 1966.]

DARLENE HUNT *et al., Respondents,* v. OCCIDENTAL LIFE
INSURANCE COMPANY OF CALIFORNIA, *Appellant.*\*

*Leavy & Taber,* by *John G. Schultz,* for appellant.

*Horton & Wilkins,* by *Hugh B. Horton,* for respondent.

HALE, J.—Plaintiff father purchased a policy of medical insurance from the defendant insurance company on August 14, 1957, covering medical expenses incurred through injury or sickness. The insurance applied to the father, his

\*Reported in 413 P.2d 349.

wife, and their three children, all named as beneficiaries. Subject to $250 deductible for each named beneficiary, it provided $15 per day maximum for hospitalization, a maximum benefit of $7,500 for each sickness or injury, and listed a detailed schedule of maximum benefits for numerous kinds and types of surgery.

In 1962, one of the children named in the policy developed psychiatric problems and received outpatient psychiatric care from a doctor specializing in psychiatry; by the fall of 1963, she had recovered sufficiently to enter college. December 16, 1963, a resurgence of her symptoms in more aggravated form required her doctor to prescribe hospitalization in Richland; he found her to be suffering from a severe psychotic reaction recognized by the medical profession as a serious and disabling illness. The patient remained in the hospital in Richland from December 16th to December 24th, and December 26th to January 3rd, for a total of 17 days, during which periods she received regular psychiatric care from a specialist in psychiatry.

January 3, 1964, her doctor referred her to University Hospital, University of Washington School of Medicine, where she received hospital, medical and psychiatric care for a total of 171 days, being discharged from there June 30, 1964. Defendant refused to pay the amounts called for by the policy schedules, claiming that the insurance did not cover the kind of illness suffered and the treatment received by the claimant. From a judgment for plaintiffs in the sum of $4,252.59, defendant appeals, presenting only the question of the policy's exclusionary clause relating to mental derangement.

Because the policy expressly provides benefits in partial reimbursement for all medical expenses incurred by reason of all injuries and all sickness except those expressly excluded, we set forth the entire exclusionary section, exactly as punctuated in the policy, as an aider in ascertaining the meaning of clause (a), the particular clause in issue:

MEDICAL EXPENSES NOT COVERED
This policy does not cover any medical expenses incurred as a result of:

(a) *treatment of mental derangement or sickness requiring rest cure,*

(b) any intentionally self-inflicted injury, or any attempt at suicide, sane or insane,

(c) dental work or dental x-rays, except where required because of injury to sound natural teeth,

(d) cosmetic surgery, except where required to correct a condition resulting from injury,

(e) eye refraction, or purchase of eye glasses or hearing aids or the fitting thereof,

(f) war, declared or undeclared, or any act of war,

(g) any injury or sickness covered by any Workmen's Compensation or Occupational Disease Law,

(h) treatment or confinement in any facility contracted for or operated by the United States Government for the treatment of members or ex-members of the armed forces,

(i) miscarriage,

(j) pregnancy or sickness due to pregnancy, miscarriage or childbirth, except that in the case of any complication caused by pregnancy, which pregnancy commences while this policy is in force, the Company will allow as covered medical expenses only that amount of expense incurred in excess of that which would have been incurred in the absence of such complication, as determined objectively by the Company (a surgical procedure for the delivery of a child or children will not be considered a complication caused by pregnancy). (Italics ours.)

The trial court read clause (a) to mean that the policy excluded only such forms of mental derangement or mental sickness as required a rest cure, but covered mental illness which required active therapy. Appellant, however, says that the clause expresses two separate and unrelated ideas, *i.e.,* that it excludes treatment for all forms of mental derangement whether or not it is treatable by rest cure *and* any other sickness requiring a rest cure.

■ A fair and sensible reading of exclusionary clause (a) in relation to the whole policy and in context with the whole exclusionary paragraph, clauses (b) to (j) inclusive, we think, supports the trial court's views as to its meaning. We note that each clause of the exclusionary

paragraph (b) through (j) deals with a single separate subject and we see no reason to give a different reading to paragraph (a) so as to exclude two wholly disparate infirmities, *i.e.*, mental derangement *and* all other sickness requiring rest cure. We are aware, too, that if the defendant insurance company ·had intended to categorically exclude from coverage all mental and emotional illness, it could readily have done so with a few direct words addressed to that end.

■ Finally, although recognizing that punctuation may be an unreliable clue to the meaning of a phrase, sentence or paragraph, we cannot ignore the absence of a separation between mental derangement and other sickness mentioned in clause (a). The interpretation espoused by appellant manifestly demands some form of punctuation or separate statement of ideas to show that the two separate and different subjects are described in the same clause.

A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together. Restatement, Contracts § 235 (c) (1932): ·

■ Were we to apply the construction advocated by appellant insurance company to clause (g), for example, that exclusionary clause would eliminate coverage for *all* injuries *and* also such sickness as might be covered by workmen's compensation, leading to the absurd result that a policy which on its face covers all injuries excludes all injuries.

An interpretation which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect. Restatement, Contracts § 236 (a) (1932).

We are of the opinion, therefore, that clause (a) purporting to exclude from coverage "treatment of mental derangement or sickness requiring rest cure," excludes only mental derangement and mental sickness for which rest cure would be required. There is no doubt that the illness for which Darlene Hunt received hospitalization, medications and medical care was a serious and disabling illness requiring

active and positive therapy and management. The very idea of a rest cure was no where to be found in the record of her treatment. Accordingly, the trial court gave a correct reading to clause (a). *Thompson v. Ezzell*, 61 Wn.2d 685, 379 P.2d 983 (1963); *Toulouse v. New York Life Ins. Co.*, 40 Wn.2d 538, 245 P.2d 205 (1952); *Peters v. Watson Co.*, 40 Wn.2d 121, 241 P.2d 441 (1952); *Kane v. Order of United Commercial Travelers of America*, 3 Wn.2d 355, 100 P.2d 1036 (1940).

Affirmed.

ROSELLINI, C. J., DONWORTH and HUNTER, JJ., and BARNETT, J. Pro Tem., concur.